09CV2770
JUDGE KENDALL
MAGISTRATE JUDGE VALDEZ
AO

#90707

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

2009L002890
CALENDAR/ROOM Q
TIME 00:00
Breach of Contract

STEVEN ROTHSTEIN, )
)
Plaintiff, )
)
vs. ) No.
)
AMERICAN AIRLINES, INC., )
) Plaintiff Demands Trial by Jury
Defendant. )

### COMPLAINT

Plaintiff Steven Rothstein ("Rothstein"), by his attorneys, Daniel Cummings and Rothschild, Barry & Myers LLP, states:

1. Rothstein is an individual who is a resident and citizen of Wilmette, Illinois.

2. Defendant American Airlines, Inc. is the world's largest airline. The airline serves 250 cities in over 40 countries with more than 4,000 daily flights.

3. On September 26, 1987 Rothstein, who was then 37 years old, purchased a lifetime AAirpass Agreement [Exhibit "A"] from defendant for the sum of $250,000, less the value of mileage remaining on his then existing Airpass ($16,490.07). The AAirpass entitled Rothstein to unlimited mileage in any class of service offered, including First Class, for Rothstein's lifetime. The purchase also entitled Rothstein to complimentary Admirals Club membership, special AAirpass reservations and information telephone numbers, First Class check-in privileges, mileage credits and other perquisites. American Airlines reserved the right to revoke the AAirpass upon one circumstance only, to wit, "if American determines that an AAirpass has been fraudulently used." The parties' mutual understanding of "fraudulent use" was the use of the AAirpass by an imposter with the complicity of the holder.

4. On November 9, 1989 Rothstein purchased a companion feature for the additional sum of $150,000 which entitled Rothstein to "take along one accompanying companion of any age per flight." The agreement was drafted exclusively by American Airlines, Inc. [Exhibit "B"] The agreement does not state, imply or suggest that the companion must be someone with a preexisting relationship with Rothstein. The parties understood at the time of entering into the agreement that companion meant any person who associates with or accompanies Rothstein on an American Airlines flight.

5. Rothstein made extensive use of the AAirpass for more than twenty years, acquiring more than 30 million miles as one of the airline's most frequent customers. Rothstein complied with all material terms and conditions of the agreement.

6. On December 13, 2008, American Airlines provided written notice of its unilateral without just cause termination and revocation of all of Rothstein's rights, interests and privileges in the AAirpass. Defendant's letter claimed that Rothstein had a practice of making "speculative reservations" for companions and that the Airline deemed this practice a fraudulent use within the meaning of the agreement. American thereafter refused to reinstate the AAirpass and refused to provide Rothstein with any of the benefits and privileges of the AAirpass.

7. Rothstein did not use the AAirpass fraudulently. Defendant materially breached the material terms of the agreement by revoking the agreement and denying the rights and privileges to which Rothstein is entitled.

8. The agreement is governed by the laws of the State of Texas.

9. Rothstein is informed and believes and thereon alleges that the present fair market value of the AAirpass is in excess of $7,000,000. This allegation is based on numerous factors, including but not limited to the following: (a) American will no longer sell the lifetime pass at

2

any price; (b) When the lifetime pass was last available to the public in 2004, its sales price was $3,000,000 without the companion feature; and (c) The cost of purchasing alternative first class travel during the remainder of Rothstein's life expectancy, based on past usage, would equal or exceed $7,000,000.

10.     Rothstein has reasonably and necessarily incurred attorney's fees as a proximate result of defendant's breach of the AAirpass agreement.

WHEREFORE, plaintiff Steven Rothstein requests judgment as follows:

1.     The award of damages in the amount of $7,000,000 representing the current fair market value of the lifetime benefits of the Agreement;

2.     Reasonable attorney's fees according to proof as authorized by TEX.CIV.PRAC. & REM.CODE ANN> §38.001.

3.     Any such other relief that the court deems just and proper.

Respectfully submitted,

DANIEL CUMMINGS

One of the attorneys for plaintiff

Daniel Cummings
Rothschild, Barry & Myers LLP (#90707)
55 West Monroe Street, Suite 3900
Chicago, IL   60603
312-372-2345

3

# EXHIBIT A



October 9, 1987

Mr. Steven A. Rothstein
2737 Illinois Road
Wilmette, IL  60091

Dear Mr. Rothstein:

Enclosed is your executed copy of the AAirpass Agreement, a copy of the letter and check you sent dated September 26, 1987 and your AAirpass cards, (AAirpass Travel, Travel Agency and Admirals Club spouse).  You are able to retain your current AAirpass account number, #3459398 and there should be no disruption of service as far as AAdvantage is concerned. You will receive one more AAirpass statement showing your September flight activity which would be the final statement for your old AAirpass account.

Your new AAirpass was given an effective date of October 1, 1987.  You will be receiving another supply of ticket stock and luggage tags under separate cover.  Once you receive the cards, please contact the AAirpass Services Department.  The telephone numbers that you would use to call us are the same as you've been using.  The toll-free number for the continental U.S. is (800) 433-6355; for Texas use (800) 772-7922; for the Dallas/Ft. Worth area, (817) 355-2192.  You can also use one of these numbers to report a lost or stolen card.

We have Winnetka Travel listed as your designated travel agency of record. If you have changed travel agencies or are no longer using a travel agency, please let us know.  If you desire to leave them as the designated agency, you need do nothing.

I have enclosed a return envelope for your convenience in returning all the cards that were issued to you for your previous AAirpass.  This includes your travel card, the travel agency card and your wife's Admirals Club card.  Please cut these in half before returning.

Thank you for your continued support of American Airlines and the AAirpass program.  If we can ever be of any assistance, please contact us.

Sincerely,

Gloria A. McKenney
Service Representative
AAirpass



AAirpass Agreement

Individuals

BETWEEN THE INDIVIDUAL IDENTIFIED ON THE LAST PAGE OF THIS
AGREEMENT ("PURCHASER") AND AMERICAN AIRLINES, INC. ("AMERICAN").

1. PURCHASE OF AAIRPASS AND ADDITIONAL MILEAGE. American is pleased
to sell to Purchaser a) one AAirpass, as indicated on the last page of
this Agreement ("AAirpass") and b) such additional blocks of mileage as
may be checked on the last page of this Agreement ("Additional Mileage").

2. GIFT TO THIRD PARTY. If Purchaser is buying the AAirpass as a
gift, the Recipient ("Recipient"), who must also execute this Agreement,
is identified on the last page of this Agreement.

3. AIR TRANSPORTATION. Upon payment in full of the price of
AAirpass and Additional Mileage relating thereto (the "Purchase Price"),
Purchaser or Recipient, if a gift, ("Holder") shall be entitled to the
following air transportation on American, upon presentation of the
AAirpass card and proof of identity to American or its authorized agent:

a) 5 Year Term AAirpass With Companion.-25,000 miles of Coach air
travel each anniversary year (as defined below) (plus Additional
Mileage purchased) for the term chosen. Holder may also travel
First Class, with mileage charged at 125% of Coach mileage for
such trip. Different factors apply to international trips.
Holder may travel on the AAirpass with one accompanying companion
per flight, whose mileage will be charged to Holder's annual
mileage allotment.

b) Regular Lifetime AAirpass With Companion.-25,000 miles of Coach
air travel each anniversary year (plus Additional Mileage
purchased) for Holder's lifetime. Price based on age at time of
purchase (proof of age required). Holder may travel First Class,
with mileage charged at 125% of Coach mileage for such trip.
Different factors apply to international trips. Holder may
travel on the AAirpass with one accompanying companion of any age
per flight, whose mileage will be charged to Holder's annual
mileage allotment.

c) Unlimited Mileage Lifetime AAirpass Without Companion.-Unlimited
mileage in any class of service offered, including First Class,
for Holder's lifetime; may be purchased and used at any age.
Price based on age at time of purchase (proof of age required).

d) Unlimited Mileage Lifetime With Companion.-Unlimited mileage in
any class of service, including First Class, for Holder's
lifetime and will entitle Holder to take along one accompanying
companion of any age per flight; may be purchased and used at any
age.

e) Unlimited 5 Year Term Without Companion.–Unlimited mileage in any class of service offered, including First Class; valid for 5 years.

f) Unlimited 5 Year Term With Companion.–Unlimited mileage in any class of service offered, including First Class; valid for 5 years and will entitle Holder to take along one accompanying companion per flight.

The term "Term AAirpasses" shall include 5 Term Year AAirpasses; the term "Lifetime AAirpasses" shall include Regular Lifetime AAirpasses and Unlimited Mileage Lifetime AAirpasses.

4. ADDITIONAL SERVICES. Each AAirpass entitles the Holder to the following additional services from American:

a) Complimentary Admirals Club membership for Holder and spouse.
b) Special AAirpass reservations and information telephone numbers.
c) First Class check-in privileges where provided.
d) Simplified self-ticketing.
e) Two complimentary cocktails and use of one headset on flights where these services are offered.
f) A detailed monthly statement.
g) Each Holder's mileage accumulated using AAirpass under American's AAdvantage Program may not exceed 500,000 miles in any anniversary year.
h) AAirpass mileage flown will be included in Holder's mileage under American's AAdvantage program as from time to time in effect.

5. PROCEDURES.

a) Purchaser should execute this Agreement and return the original and one copy to American for acceptance, together with a non-refundable deposit in the amount of $250. If the AAirpass is to be a gift, Recipient must sign both copies of this Agreement as well as Purchaser. American shall mail Holder his or her AAirpass card by certified mail within approximately two weeks. Payment of the Purchase Price is due within 15 days of Holder's receipt of the AAirpass card. If payment is not made by such date, American may, at its option, rescind this Agreement and retain the $250 deposit as liquidated damages for Purchaser's breach, and Holder shall immediately return the AAirpass card to American. AAirpass cards may not be used until American has received payment in full of the Purchase Price, by a certified or bank check, wire transfer of funds or transfer of funds upon deposit of a personal check. Holder may begin traveling upon receipt of his or her AAirpass card and payment in full of the Purchase Price.

b) Each AAirpass card shall be stamped "Use thru..." followed by a date which shall be two years after Holder's first anniversary date. The first anniversary date is the first day of the month following American's receipt of this Agreement, duly completed and executed and accompanied by all necessary documentation. Agreements received after the fifth day of any month shall be deemed received on the first day of the following month for

monthly statements and computing the annual periods during which Holder's mileage accrues. (Such annual periods are herein called "anniversary years.") American shall issue replacement cards to Holder prior to the date set forth on the AAirpass card, provided the AAirpass term has not expired.

c) The AAirpass card must be presented when checking in for a flight (i.e., at time of boarding pass issuance) and to receive any of the services described above. The AAirpass card shall remain American's property, and Holder shall return it to American if required pursuant to the terms of this Agreement. Any Admirals Club membership card provided for use by Holder's spouse shall also remain American's property and shall be returned to American simultaneously with Holder's AAirpass card.

d) Mileage flown by Holder will be deducted from the annual mileage allotted to his or her AAirpass (except for Unlimited Mileage 5 Year Term or Lifetime AAirpass Holders). All mileage will be based on origin-destination data published by the Department of Transportation or its successor. Mileage on a through flight (i.e., one with at least one stop between origin and destination points, but not requiring a change of aircraft) will equal nonstop mileage between origin and destination points. Mileage on a connecting flight (i.e., requiring change of aircraft) will equal nonstop mileage, provided (i) the trip consists of no more than three separate flight segments; (ii) scheduled connections between consecutive segments occur within six hours (24 hours for connections to or from Hawaii, San Juan, the U.S. Virgin Islands and any international flight); (iii) origin-destination nonstop mileage on a two-flight trip exceeds the mileage of at least one of the flights; (iv) origin-destination mileage on two consecutive flights on a three-flight trip exceeds the mileage of at least one of the flights; and (v) the itinerary of the origin-destination trip is one published by American in the Routing Guide of the Tariff issued by the Airline Tariff Publishing Company.

e) Reservations may be made through authorized Travel Agents or American. Once a reservation is made, Holder may write his or her own ticket using special coupons supplied by American, or Holder may request American or a Travel Agent to complete the coupon.

f) Each AAirpass, except Unlimited Mileage Lifetime and Unlimited 5 Year Term, is applicable to Coach air travel or its equivalent. Each AAirpass may be used for First Class travel where offered by American, at Holder's option, provided Holder has reserved a First Class seat or First Class seats are available at time of check-in, with mileage recorded at the premium over regular Coach mileage as described above.

g) Holder will receive a detailed monthly statement, including any charges due for excess mileage flown.

h) Every year, on the anniversary date, Holder's account will be credited with the pre-purchased mileage for that year plus all unused mileage for the previous year(s). Any mileage used which exceeds the annual mileage allotment will be billed to Holder as described below. Mileage may not be borrowed from future years or from other AAirpasses purhcased by Purchaser.

i) All mileage must be used by the end of the AAirpass term purchased, except the 5 Year Term AAirpass. If any additional mileage remains unused at the end of the 5 Year Term, Holder has one (1) additional year to use such mileage.

6. EXCESS MILEAGE.

a) If AAirpass mileage, including premiums for First Class travel, flown by Holder (or his or her companion(s) in any anniversary year (as determined by anniversary dates) exceeds Holder's mileage allotment for that year (including Additional Mileage and unused mileage from previous years), Holder hereby promises to pay American for such mileage upon receipt of invoice therefore. Such excess mileage charges will be made at a rate per mile to be fixed by American from time to time. For travel during any calendar month period, this rate shall be the rate specified in Holder's statement for the preceding month. The rate for 5 Year Term AAirpasses and Regular Lifetime AAirpasses shall be based on the average full fare Coach rate per mile on American's then-current route system. By using the AAirpass card to incur excess mileage, Holder consents and agrees to such charges.

b) If Holder of any AAirpass fails to pay any charge for excess mileage so invoiced by American, American shall be entitled, at its option, to suspend the usage of the AAirpass card and Holder's rights to travel hereunder until payment in full has been received by American. Such suspension shall not in any way extend Holder's anniversary date.

7. REFUNDS.

a) In the event American suspends all service between one or more city pairs served by it on the date of this Agreement, Holder may obtain a refund of a portion of the Purchase Price of the AAirpass computed in accordance with subparagraph (c) below by written request to American accompanied by Holder's AAirpass card, and this Agreement shall terminate. However, no refunds will be made under this subparagraph unless (i) Holder's first use of AAirpass for transportation occurs at least 12 months prior to such request, and (ii) Holder's AAirpass travel on such suspended city pair routes constituted at least 25% of total AAirpass mileage flown by Holder in the 12-month period preceding such request.

holder in the event holder becomes mentally incapacitated, or holder in the event holder becomes physically disabled and unable to fly on American may obtain a refund per the formula shown below in subparagraph (c)

b) Holder's estate may, upon Holder's death, obtain a refund of a portion of the Purchase Price of the AAirpass computed in accordance with subparagraph (c) below, by written request to American accompanied by Holder's AAirpass card and a certified copy of duly issued Letters Testamentary or Letters of Administration, and this Agreement shall terminate.

c) Upon receipt of a refund request pursuant to subparagraph (a) or (b) above, within 90 days American shall perform the following calculations pertaining to Holder's AAirpass and refund the lesser amount of A or B (may be $0), after deducting sums due for excess mileage flown:

(1) $$\frac{\text{Remaining full months before expiration}}{\text{Total AAirpass months purchased}} \quad x \quad \text{Purchase Price* = A}$$

(2) $$\frac{\text{Remaining mileage*}}{\text{Total mileage purchased*}} \quad x \quad \text{Purchase Price* = B}$$

(*including Additional Mileage)

d) For purposes of applying such formulas to refunds on Lifetime AAirpasses, these AAirpasses shall be deemed to have the following terms: Regular Lifetime AAirpass - 120 months (10 years); Unlimited Mileage Lifetime AAirpass - 200 months. To determine the mileage purchased with any Regular Lifetime AAirpass, multiply the annual mileage allowance by the number of months given in the preceding sentence, and add any Additional Mileage purchased. The second formula above is inapplicable to refunds on Unlimited Mileage Lifetime AAirpasses or Unlimited 5 Year Term AAirpasses.

8. WORK STOPPAGE. In the event of a strike or work stoppage that requires the total suspension of American's flights,

a) beginning with the 8th day of any such strike, and for each succeeding day, 100 additional miles of future air travel will be credited to Holder's currently available mileage upon termination of such strike; and

b) for each full month (i.e. 30 days) such strike continues, Holder's anniversary date shall be extended to the first day of the month following the anniversary date, and the anniversary date as so extended shall become the anniversary date for the purposes of determining mileage accruals and AAirpass expiration.

9. LOST OR STOLEN CARDS OR COUPONS. If an AAirpass card or ticket coupon is lost or stolen, Holder must immediately notify American in writing or by telephone. The number to call to report such loss or theft is toll-free 800-433-6355 (in Texas, toll free 800-772-7922). Holder will be liable for all unauthorized mileage flown as a result of lost or stolen ticket coupons, if boarding passes for the flights were issued prior to notification.

Purchaser
Initial

10. USAGE BY CARD HOLDER ONLY. For Holder's protection, his or her signature will be required at the time of check-in for a flight. Additional identification (such as driver's license or credit card) may, at American's discretion, be required. AAirpass is valid for use only by the individual whose name appears on the card. AAirpass cards and Holder's rights under this Agreement are not transferable, and coupons used in conjunction with AAirpass travel have no cash refund value.

11. TRAVEL. AAirpass entitles the Holder to reserve one seat per flight (two seats per flight if qualified for travel with a companion) and such travel is subject to American's Rules Tariff as in effect at the time of travel and any other general terms and conditions applicable to travel on American which may subsequently replace or supplement such Tariff. AAirpass is valid only for travel on American. Travel is authorized anywhere on American's system in the continental United States, Hawaii, Puerto Rico and the U.S. Virgin Islands. AAirpass is now valid for travel to or from some of American's international destinations, and will be extended to other routes if all required foreign government approvals are obtained, and Holder will be so notified in his or her monthly statement. AAirpass travel is not valid on American Eagle.

12. FRAUDULENT USAGE. If American determines that an AAirpass has been fraudulently used, American reserves the right to revoke the AAirpass and all privileges associated with it. Holder will thereupon forfeit all rights to the AAirpass, without refund, and will return the AAirpass card and this Agreement shall terminate.

13. ADDRESS CHANGES. Holder must advise American in writing of any change in address.

14. FORCE MAJEURE. Except as provided above, American shall not be liable for delays in performance hereunder resulting from causes beyond its reasonable control.

15. PROOF OF AGE. For Regular Lifetime and Unlimited Mileage Lifetime AAirpasses, proof of Holder's age, issued in Holder's name, must be submitted (e.g., copy of valid driver's license, passport or birth certificate).

16. U.S. FUNDS. All payments hereunder must be made in United States dollars.

17. MISCELLANEOUS.

a) Any amendment or supplement to this Agreement must be in writing and executed by both parties. This Agreement supersedes all prior communications or agreements between the parties regarding AAirpass.

b) This Agreement shall be governed by the laws of the State of Texas and, in the case of international transportation is subject to the Department of Transportation's continued approval of American's AAirpass Tariff and the appropriate foreign government

approval. In the event any federal, state or local governmental
or judicial body asserts jurisdiction over the subject matter of
this Agreement or any AAirpass and promulgates rules or regu-
lations pertaining thereto, or imposes penalties or other re-
strictions on the use or sale of any AAirpass, American shall
have the right to refund the remaining value of any AAirpass
affected by such action (as determined under paragraph 7 above)
and to thereupon terminate this Agreement as to such AAirpass.

c) American reserves the right to terminate this Agreement and
refund the Purchase Price of any AAirpass, less charges for
mileage actually flown, at a rate per mile of $.24, except for
Unlimited Mileage AAirpasses, which will be refunded in
accordance with paragraph 7, subparagraph d) of this agreement.

d) American's failure to enforce any of its rights under this
Agreement shall not constitute a waiver of such rights.

13. FAIR CREDIT BILLING ACT NOTICE. This notice contains important
information about your (or Holder's) rights and our (or American's)
responsibilities under the Fair Credit Billing Act, with respect to excess
mileage charges.

a) NOTIFY US IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR BILL. If you
think your bill is wrong, or if you need more information about a
transaction on your bill, write to us on a separate sheet at the
address listed on your bill. Write to us as soon as possible.
We must hear from you no later than 60 days after we sent you the
first bill on which the error or problem appeared. You can
telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
° Your name and account number.
° The dollar amount of the suspected error.
° Describe the error and explain, if you can, why you believe
there is an error. If you need more information, describe the
item you are not sure about. Enclose travel coupon copies if
necessary.

b) YOUR RIGHTS AND OUR RESPONSIBILITIES AFTER WE RECEIVE YOUR
WRITTEN NOTICE. We must acknowledge your letter within 30 days,
unless we have corrected the error by then. Within 90 days, we
must either correct the error or explain why we believe the bill
was correct.

After we receive your letter, we cannot try to collect any amount
you question, or report you as delinquent. We can continue to
bill you for the amount you question. You do not have to pay any
questioned amount while we are investigating, but you are still
obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, we will correct
the error. If we didn't make a mistake, you will have to pay the
questioned amount. In either case, we will send you a statement

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we do not follow these rules, we cannot collect the first $50 of the questioned amount, even if your bill was correct.

c) SPECIAL RULE FOR CREDIT CARD PURCHASES. If you have a problem with the quality of services on excess-mileage flights and you have tried in good faith to correct the problem, you may have the right not to pay the remaining amount due on such services.

PURCHASER (AND RECIPIENT, IF A GIFT) CERTIFIES THAT HE OR SHE HAS READ AND UNDERSTANDS THE FOREGOING TERMS AND CONDITIONS. THIS AGREEMENT WILL NOT BECOME BINDING UNTIL COUNTERSIGNED BY AMERICAN AT AMERICAN'S CORPORATE HEADQUARTERS.

Form of Payment (check one):

___ Corporate Check ___ Certified Check ✓ Personal Check ___ Bank Transfer

American Airlines Sales Representative:

Name _____

Station ____ 9CC _____

Branch ____ 564 _____

     Mr. Ernie Thurmond
     Los Angeles Sales

PURCHASER: _STEVEN A. ROTHSTEIN_ 9/26/87
(Please Print Name) (Date)

_____
(Signature)

RECIPIENT (if a gift):

_____
(Please Print Name) (Date)

_____
(Signature)

AMERICAN AIRLINES, INC.

By _____ 10/1/87
(Date)

Title___ Manager, AAirpass Sales

Total Deposit: $_____ I hereby
acknowledge receipt of deposit for
American Airlines:

By_____

Title_____

Note: If either Purchaser or Recipient is a minor, his or her legal guardian must
co-sign this Agreement, thereby agreeing to be bound by the terms and conditions
hereof.

AMERICAN AIRLINES, INC.

By _____ 10/2/87
(Date)

Title___ Vice President, Passenger Sales

# A'Airpass™
### INVOICE

IMPORTANT:
To insure proper credit to your account, indicate account number on remittance and mail to:

American Airlines, Inc.
AAirpass Department
P.O. Box-85463 619170
Dallas, Texas 75285 75261

| CORPORATE ACCOUNT NUMBER |
|---|
|  |

| INVOICE DATE |
|---|
| 10/09/87 |

Mr. Steven A. Rothstein
2737 Illinois Road
Wilmette, IL  60091

| AMOUNT DUE |
|---|
| -0- |

PLEASE DETACH AND RETURN THE ABOVE PORTION WITH YOUR REMITTANCE

| DATE | AAIRPASS ACCOUNT NUMBER | DESCRIPTION OF TRANSACTION | TRANSACTION AMOUNT |
|---|---|---|---|
| /87 | 3459398 | 1 — Unlimited Lifetime AAirpass Cost based on age of cardholder as being under 40. | $250,000.00 |
|  |  | Less value of mileage remaining from previous AAirpass. | ($16,490.07) |
|  |  | Total cost | $233,509.93 |
|  |  | Payment received (10/01/87) | ($233,509.93) |
|  |  | Balance Due | -0- |

BALANCE DUE 30 DAYS FROM RECEIPT OF INVOICE

PLEASE PAY LAST AMOUNT ABOVE

AmericanAirlines

# EXHIBIT B

AAirpass Agreement Price Sheet

American Airlines, P. O. Box 619170,
Dallas/Fort Worth Airport, TX 75261-9170

No._____  Date _9/26/87_____  INDIVIDUAL
(For internal use only)

Name of Purchaser __Steven A. Rothstein_____

Name of Cardholder __Steven A. Rothstein_____

( ) Business Address _Box 2273 Loop Station_____ City _Chicago_____

State _Illinois____ Zip _60690____ ( ) Telephone(_312)_580 4121___

( ) Home Address _2737 Illinois Road_____ City _Wilmette_____

State _Illinois____ Zip _60091____ ( ) Telephone(_312) 256 2995___

Please ( ) check preferred address and telephone number above.

Sex: M __ F __ Age: ___ Date of Birth _9_/_22_/_50_
                                      mo.  day  year

Lifetime Admirals Club Member _X_ Yes __ No  Spouse Name __Nancy - I want to keep Admirals
AAdvantage Participant _X_ Yes __ No  If yes, Account Number _3659368_____  Club

AAIRPASS PRODUCT (indicate one):                          Price*

___ 5-Year Term AAirpass                      $_____

___ Regular Lifetime AAirpass                 _____

_X_ Unlimited Mileage Lifetime AAirpass       _250,000.00**_

___ Unlimited Lifetime Companion              _____

___ Unlimited 5 Year Term                     _____

___ Unlimited 5 Year Term Companion           _____

**Less refund from current AAirpass      Subtotal   $_250,000.00**_

ADDITIONAL MILEAGE (Mileage blocks may not exceed term of AAirpass purchased.)

| AAirpasses | No. of 5,000-Mile Blocks | x Price* | |
|---|---|---|---|
| 5-Year Term | (_____ | x $_____) | = $_____ |
| Regular Lifetime | (_____ | x $_____) | = $_____ |

TOTAL PURCHASE PRICE  $_250,000.00**_

Prices are subject to change without notice. Prior to returning Agreement, contact
American Airlines for current prices.



RIDER TO AAIRPASS AGREEMENT

BETWEEN AMERICAN AIRLINES, INC.
and

Steven A. Rothstein
_____
dated

September 26, 1987
_____

1. Subparagraph 5(a) of the AAirpass Agreement referred to above is amended to read as follows:

   5(a). Each AAirpass may be used upon payment in full of the Purchase Price and issuance of an AAirpass card in Holder's name. Payment shall be deemed made (1) upon American's receipt of certification or cashier's check, transfer of immediately available funds or credit to American's account after deposit of Purchaser's check or (2) if Purchaser elects to finance a portion of the Purchase Price, upon receipt of credit approval by American, payment to American of its predetermined down payment (paid in any manner described above) and Purchaser's execution and delivery to American of American's AAirpass Promissory Note for the balance of the purchase price (the "Note"), together with such proof of valid execution as American may resonably require.

2. The Agreement is amended to include the following new paragraph 19.

   19. Default. If Purchaser breaches any of its obligations under the Agreement; or fails to make payments under the Note; or Purchaser suffers or initiates any assignment for the benefit of creditors, the appointment of a receiver, or filing of a petition in bankruptcy or the arrangement, reorganization, dissolution or liquidation, then the unpaid principal amount of the Note and all accrued and unpaid interest thereon shall become immediately due and payable and shall bear interest at the maximum rate permitted by law. In addition, American shall thereupon have the right, but not the obligation, to suspend or terminate the Agreement and all AAirpass travel rights without notice and without further obligation, and to enforce any rights, and look to any security, available to it.

Except as set forth above, the Agreement shall continue unamended and un-modified and in full force and effect.

AMERICAN AIRLINES, INC.

Steven A. Rothstein
_____
(Purchaser)

By: _____
     Mike Buckman

Title: Vice President, Sales & Advertising

_____
(Signature)

OFFICIAL SEAL



November 29, 1989

Mr. Steven A. Rothstein
2737 Illinois Road
Wilmette, IL  60091-1263

Re: AAirpass Account #3459398

In consideration of your purchase of one or more AAirpasses from American
Airlines, Inc. ("American"), American agrees to amend the AAirpass
Agreement (Individuals) (the "Agreement") to read as follows:

Addition to Subparagraph 3(c):
      "Purchaser has agreed to purchase a companion feature to be
      used in conjunction with an Unlimited Mileage Lifetime AAirpass.
      This companion feature will allow Holder to make a reservation
      for and travel on the AAirpass with one (1) companion per flight.
      Such companion shall be entitled to receive the same in-flight
      amenities as provided to Holder.  If spouse is the companion,
      the spouse will be allowed to travel separately from Holder,
      provided that the spouse travels on the flight immediately prior
      to or just after the flight taken by Holder.  It is understood
      that when spouse travels in this manner, Holder will not be
      allowed a companion on the same flight as Holder."

Except as specifically set forth above, the Agreement shall continue
unamended and unmodified and in full force and effect.  If the foregoing
is acceptable to you, please execute and return this letter to American
at P.O. Box 619170, Dallas/Fort Worth Airport, Texas 75261-9170.

                                    Sincerely,

                                    AMERICAN AIRLINES, INC.

                                    Mike Buckman
                                    Vice President
                                    Sales & Advertising

ACCEPTED AND AGREED TO THIS

_30_ day of _November_, 19_89_

_____
(Signature)

_Steven A. Rothstein_
(Print Name)

OFFICIAL    SEAL
JENNIFER LOUISE ANDERSON
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 9/26/93

NOTE

November 28, 1989
Date

FOR VALUE RECEIVED, the Undersigned hereby promises to pay to American Airlines, Inc. ("American") or its order, the sum of __One Hundred Thirty-Five Thousand & 00/100__ United States Dollars (U.S. $ 135,000.00 ), and to pay interest on the unpaid principal amount outstanding, commencing as of __January 1__, 1990, at an annual rate of 12.50%. The first payment shall be made on ___February 1, 1990 and subsequent payments shall be made on the same date of each successive month. Each payment shall be in the amount of $3,037.22 ___ until the principal, and all interest, have been paid in full, provided, however, that all sums owed hereunder shall be paid in full on or before __January 1__, 1995. Each payment shall be applied first to the payment of accrued interest owing to the date received and the remainder to principal.

This Note evidences the Undersigned's unconditional obligation to pay a portion of the purchase price of one or more American Airlines AAirpasses, purchased pursuant to that certain AAirpass Agreement dated September 26, 1987, between American and the Undersigned (the "Agreement") and American is entitled to certain benefits described therein. If the Undersigned breaches any of its obligations under the Agreement; or fails to make payments under this Note; or if the Undersigned suffers or initiates any assignment for the benefit of creditors, the appointment of a receiver, or the filing of a petition in bankruptcy or for arrangement, reorganization, dissolution or liquidation, then the unpaid principal amount of this Note and all accrued and unpaid interest thereon shall become immediately due and payable and shall bear interest at the maximum rate permitted by law. In addition, American shall thereupon have the right, but not the obligation, to suspend or terminate the Agreement without notice and without further obligation to the Undersigned, and to enforce any rights, and look to any security, available to it. The Undersigned, including any endorsers hereof, waives presentment, protest, notice of protest and dishonor and the benefit of all exemption laws now in force or hereafter enacted, including stay of execution and condemnation. The Undersigned agrees to pay all collection expenses, court costs and reasonable attorneys' fees incurred in collecting or enforcing this Note. The Undersigned irrevocably consents to the sale, assignment or transfer of this Note and any rights contained herein and agrees that all payments shall be made without set-off or counterclaim, both of which are hereby waived. The Undersigned agrees that the only defense which may be asserted in any action on the Note is that of payment, and that any other claim or defense shall be asserted in separate proceedings.

This Note shall be governed by and construed in accordance with the laws of the State of Texas.

By: _____          _Steven A. Rothstein_
   (Signature)                         (Purchaser)

_Steven A. Rothstein_                  _2737 Illinois Road_
   (Print Name)

_____(Title)_____         _Wilmette, IL  60091-1263_
                                       (Principal Place of Business
FFICIAL  SEAL                           of Borrower)



November 9, 1989

Mr. Steven A. Rothstein
2737 Illinois Road
Wilmette, IL   60091-1263

Re: AAirpass Account #3459398

In consideration of your purchase of one or more AAirpasses from American Airlines, Inc. ("American"), American agrees to amend the AAirpass Agreement (Individuals) (the "Agreement") to read as follows:

Addition to Subparagraph 3(d):
   "Purchaser has agreed to purchase a companion feature to be used in conjunction with an Unlimited Mileage Lifetime AAirpass. This companion feature will allow Holder to make a reservation for and travel on the AAirpass with one (1) companion per flight. Such companion shall be entitled to receive the same in-flight amenities as provided to Holder."

Except as specifically set forth above, the Agreement shall continue unamended and unmodified and in full force and effect.  If the foregoing is acceptable to you, please execute and return this letter to American at P.O. Box 619170, Dallas/Fort Worth Airport, Texas 75261-9170.

Sincerely,

AMERICAN AIRLINES, INC.

ACCEPTED AND AGREED TO THIS

_____ day of _____, 19____ .

_____
(Signature)

_____
(Print Name)



**INVOICE**

IMPORTANT:
To insure proper credit to your account, indicate account number on remittance and mail to:

American Airlines, Inc.
AAirpass Department
P.O. Box 619170, MD1395, CPII
Dallas, Texas 75261-9170

| CORPORATE ACCOUNT NUMBER | INVOICE DATE |
|---|---|
|  | 11/09/89 |

Mr. Steven A. Rothstein
2737 Illinois Road
Wilmette, IL  60091-1263

| AMOUNT DUE |
|---|
| $150,000.00 |

PLEASE DETACH AND RETURN THE ABOVE PORTION WITH YOUR REMITTANCE

| DATE | AAIRPASS ACCOUNT NUMBER | DESCRIPTION OF TRANSACTION | TRANSACTION AMOUNT |
|---|---|---|---|
| /09/89 | 3459398 | Companion feature to be used in conjunction with an *Unlimited Mileage Lifetime AAirpass.* Cost based on age of cardholder at 39 years old.<br><br>Cardholder: Steven A. Rothstein | $150,000.00 |
|  |  | Total Due | $150,000.00 |

BALANCE DUE 30 DAYS FROM RECEIPT OF INVOICE

PLEASE PAY LAST AMOUNT ABOVE

AmericanAirlines

ORIGINAL INVOICE

STEVEN ROTHSTEIN 10-87
2737 ILLINOIS RD.
WILMETTE, IL 60091

*AA Airpass*

482

2-15/710

11/30 19 89

PAY
TO THE
ORDER OF   American Airlines/Airpass                                    $ 15,000.00

Fifteen thousand & 00/100——————————————————————————————DOLLARS

The Northern Trust Company
Chicago, Illinois

FOR  Companion Feature

⑈000482⑈ ⑆071000152⑆4005910⑈

# A⟡Airpass

## INVOICE

IMPORTANT:
To insure proper credit to your
account, indicate account
number on remittance and mail to:

American Airlines, Inc.
AAirpass Department
P.O. Box 85407
Dallas, Texas 75285

| CORPORATE ACCOUNT NUMBER |
| --- |
|  |

| INVOICE DATE |
| --- |
| 11/29/89 |

Mr. Steven A. Rothstein
2737 Illinois Road
Wilmette, IL  60091-1263

| AMOUNT DUE |
| --- |
| $150,000.00 |

PLEASE DETACH AND RETURN THE ABOVE PORTION WITH YOUR REMITTANCE



November 29, 1989

Mr. Steven A. Rothstein
2737 Illinois Road
Wilmette, IL  60091-1263

Re: AAirpass Account #3459398

In consideration of your purchase of one or more AAirpasses from American
Airlines, Inc. ("American"), American agrees to amend the AAirpass
Agreement (Individuals) (the "Agreement") to read as follows:

Addition to Subparagraph 3(c):
    "Purchaser has agreed to purchase a companion feature to be
    used in conjunction with an Unlimited Mileage Lifetime AAirpass.
    This companion feature will allow Holder to make a reservation
    for and travel on the AAirpass with one (1) companion per flight.
    Such companion shall be entitled to receive the same in-flight
    amenities as provided to Holder.  If spouse is the companion,
    the spouse will be allowed to travel separately from Holder,
    provided that the spouse travels on the flight immediately prior
    to or just after the flight taken by Holder.  It is understood
    that when spouse travels in this manner, Holder will not be
    allowed a companion on the same flight as Holder."

Except as specifically set forth above, the Agreement shall continue
unamended and unmodified and in full force and effect.  If the foregoing
is acceptable to you, please execute and return this letter to American
at P.O. Box 619170, Dallas/Fort Worth Airport, Texas 75261-9170.

Sincerely,

AMERICAN AIRLINES, INC.

ACCEPTED AND AGREED TO THIS

_30_ day of _November_, 19_89_.

_____
(Signature)

_STEVEN A. ROTHSTEIN_
(Print Name)

OFFICIAL SEAL
JENNIFER LOUISE ANDERSON
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 9/20/93

NOTE

<u>November 28, 1989</u>
Date

FOR VALUE RECEIVED, the Undersigned hereby promises to pay to American Airlines, Inc. ("American") or its order, the sum of <u>One Hundred Thirty-Five Thousand & 00/100</u> United States Dollars (U.S. $ <u>135,000.00</u> ), and to pay interest on the unpaid principal amount outstanding, commencing as of <u>January 1</u>, 1990, at an annual rate of 12.50%. The first payment shall be made on <u>February 1, 1990</u> and subsequent payments shall be made on the same date of each successive month. Each payment shall be in the amount of <u>$3,037.22</u> until the principal, and all interest, have been paid in full, provided, however, that all sums owed hereunder shall be paid in full on or before <u>January 1</u>, 1995. Each payment shall be applied first to the payment of accrued interest owing to the date received and the remainder to principal.

This Note evidences the Undersigned's unconditional obligation to pay a portion of the purchase price of one or more American Airlines AAirpasses, purchased pursuant to that certain AAirpass Agreement dated <u>September 26, 1987</u>, between American and the Undersigned (the "Agreement") and American is entitled to certain benefits described therein. If the Undersigned breaches any of its obligations under the Agreement; or fails to make payments under this Note; or if the Undersigned suffers or initiates any assignment for the benefit of creditors, the appointment of a receiver, or the filing of a petition in bankruptcy or for arrangement, reorganization, dissolution or liquidation, then the unpaid principal amount of this Note and all accrued and unpaid interest thereon shall become immediately due and payable and shall bear interest at the maximum rate permitted by law. In addition, American shall thereupon have the right, but not the obligation, to suspend or terminate the Agreement without notice and without further obligation to the Undersigned, and to enforce any rights, and look to any security, available to it. The Undersigned, including any endorsers hereof, waives presentment, protest, notice of protest and dishonor and the benefit of all exemption laws now in force or hereafter enacted, including stay of execution and condemnation. The Undersigned agrees to pay all collection expenses, court costs and reasonable attorneys' fees incurred in collecting or enforcing this Note. The Undersigned irrevocably consents to the sale, assignment or transfer of this Note and any rights contained herein and agrees that all payments shall be made without set-off or counterclaim, both of which are hereby waived. The Undersigned agrees that the only defense which may be asserted in any action on the Note is that of payment, and that any other claim or defense shall be asserted in separate proceedings.

This Note shall be governed by and construed in accordance with the laws of the State of Texas.

By: _____
(Signature)

STEVEN A. ROTHSTEIN
(Print Name)

Steven A. Rothstein
(Purchaser)

2737 Illinois Road

Wilmette, IL 60091-1263
(Principal Place of Business of Borrower)

_____ (Title) _____

OFFICIAL SEAL



RIDER TO AAIRPASS AGREEMENT

BETWEEN AMERICAN AIRLINES, INC.
and

Steven A. Rothstein
dated

September 26, 1987

1.  Subparagraph 5(a) of the AAirpass Agreement referred to above is amended to read as follows:

5(a).  Each AAirpass may be used upon payment in full of the Purchase Price and issuance of an AAirpass card in Holder's name.  Payment shall be deemed made (1) upon American's receipt of certification or cashier's check, transfer of immediately available funds or credit to American's account after deposit of Purchaser's check or (2) if Purchaser elects to finance a portion of the Purchase Price, upon receipt of credit approval by American, payment to American of its predetermined down payment (paid in any manner described above) and Purchaser's execution and delivery to American of American's AAirpass Promissory Note for the balance of the purchase price (the "Note"), together with such proof of valid execution as American may resonably require.

2.  The Agreement is amended to include the following new paragraph 19.

19.  Default.  If Purchaser breaches any of its obligations under the Agreement; or fails to make payments under the Note; or Purchaser suffers or initiates any assignment for the benefit of creditors, the appointment of a receiver, or filing of a petition in bankruptcy or the arrangement, reorganization, dissolution or liquidation, then the unpaid principal amount of the Note and all accrued and unpaid interest thereon shall become immediately due and payable and shall bear interest at the maximum rate permitted by law.  In addition, American shall thereupon have the right, but not the obligation, to suspend or terminate the Agreement and all AAirpass travel rights without notice and without further obligation, and to enforce any rights, and look to any security, available to it.

Except as set forth above, the Agreement shall continue unamended and un-modified and in full force and effect.

AMERICAN AIRLINES, INC.

Steven A. Rothstein
(Purchaser)

(Signature)

OFFICIAL SEAL

By:_____

Title:_____

# AA AmericanAirlines

PLEASE RETURN WITH YOUR LATEST
FINANCIAL STATEMENT TO:

American Airlines
AAirpass Department
P.O. Box 619170
Dallas/Fort Worth Airport, Texas 752€

## REQUEST FOR AAirpass

**APPLICANT** (Exact legal corporate, partnership or individual name to be used)

Steven A. Rothstein

| ADDRESS (Street) | (City, State and ZIP Code) | TELEPHONE NUMBER |
|---|---|---|
| 2737 Illinois Road    Wilmette, Illinois    60091 | | 312 256 2995 |

| ESTIMATE THE FOLLOWING | TOTAL MONTHLY TRAVEL $ | MONTHLY TRAVEL ON AMERICAN $ | FREQUENT DESTINATIONS |
|---|---|---|---|
| | | | |

| CORPORATION ☐   PARTNERSHIP ☐ | TYPE OF BUSINESS ACTIVITY (e.g. Steel Manufacturer, Law Firm, etc.) | D & B RATING OR DUNS CODE |
|---|---|---|
| HOW LONG IN BUSINESS: (Years) (Months) | | |

| PARENT COMPANY, IF ANY | DIVISION OF | SUBSIDIARY OF |
|---|---|---|
| | | |

| COMPLETE IF CORPORATION: State where incorporated, date of incorporation, officers names and titles. | IF APPLICANT IS AN INDIVIDUAL - GIVE |
|---|---|
| | HOME ADDRESS - 2737 Illinois Road Wilmette, Illinois 60091 |
| | PHONE NUMBER - 312 256 2995 |
| | SOCIAL SECURITY # - 100 40 1636 |

| DO YOU HAVE AN AMERICAN AIRLINES CREDIT CARD? | DO YOU HAVE CREDIT WITH ANY OTHER AIRLINES? |
|---|---|
| ☐ NO   ☒ YES   NUMBER: | NAME:   NUMBER: |

**REFERENCES**   American Express

**NAME OF BANK AND BRANCH**

Boston Safe Deposit & Trust

| ADDRESS | ACCOUNT NUMBER | TELEPHONE NUMBER |
|---|---|---|
| One Boston Place, Boston, MA   02108 | 54-5503 | 617-722-7894 |

**CREDIT REFERENCES**

| NAME | ADDRESS | ACCOUNT NUMBER |
|---|---|---|
| 1. American Express | | 3737-386722-22001 |
| 2. Diners Club | | 3864-000459-0047 |
| 3. | | |

| VERY IMPORTANT!  Give Exact Customer Billing (Statement) Address | MAIL AAIRPASSES TO: |
|---|---|
| MR. STEVEN A. ROTHSTEIN | Steven A. Rothstein |
| 2737 ILLINOIS ROAD | 2737 Illinois Road |
| WILMETTE, ILLINOIS 60091 | Wilmette, Illinois 60091 |
| ATTN: | |

WE HEREBY AUTHORIZE THE ABOVE LISTED BANK AND CREDIT REFERENCES TO RELEASE INFORMATION TO AMERICAN AIRLINES, INC. FOR USE IN THE EVALUATION OF THIS CREDIT REQUEST. (If individual, the undersigned hereby gives authorization to American Airlines to obtain a consumer credit report).

| REQUESTING OFFICER'S SIGNATURE | TYPE NAME | TITLE | DATE |
|---|---|---|---|
| *[signature]* | Steven A. Rothstein | | 11/30/89 |

# Fly Into the Future with AAirpass

FOR OFFICE USE ONLY — DO NOT ENTER ANY INFORMATION

| Account Number | Date | Type - Code |
|---|---|---|
| | | |

BEAR STEARNS AND COMPANY, INC. ROTHSTEIN, STEVEN
BS01
0077952

| DESCRIPTION | RATE | HOURS | EARNINGS | YEAR-TO-DATE | TAXES/DED | YEAR-TO-DATE |
|---|---|---|---|---|---|---|
| GROUP-LIFE | | | | | FEDERAL TAX | |
| LAW | | | | | FICA | 00 7640010 |
| COMM PAY | | | 00 | 8800 | HOSP | 00 3604800 |
| NON-PLNFEES | | | 00 1476928 | SUPPL LIFE IN | | 322000 |
| COMM - PAY | | | 00 29454900 | SUPPL DIS-INS | 00 244300 |
| SAP DIV | | | 398 | SUPPL E.T.D. | 00 138600 |
| VESTED ERSAP | | | 166222 | IL-ADVANCE | 00 2710013 |
| | | | 2172 | ILLINOIS | 00 1000000 |
| | | | 94 | | 00 8954773 |

| | EARNINGS | TAXES | DEDUCTIONS | NET PAY | | PAY PERIOD | CHECK NO. | AMOUNT OF CHECK |
|---|---|---|---|---|---|---|---|---|
| CURRENT | 166322 | 00 | 00 | 166322 | BEGINS | 11-10-89 | 1331347 | 166322 |
| YEAR TO DATE | 35985542 | 8895963 | 5129002 = 21960577 | | END | 11-10-89 | | |

OPPENHEIMER & CO. INC.-PAYROLL ACCOUNT
WORLD FINANCIAL CENTER

| Co Code | Department | File No. | Class No./ID. | Name | | | Pay Period | Pay Date |
|---|---|---|---|---|---|---|---|---|
| VSJ | 161 | 5079 | R | ROTHSTEIN STEVEN A | | | ENDING 11/15/89 | 11/15/89 |

| Hours/Units | Rate | | Earnings | Type | Deduction | Type | Deduction | Type |
|---|---|---|---|---|---|---|---|---|
| | | | 101394 | MISC | 3900 | SL INS | 825 | LTDINS |
| | | | 349977 | RT ADJ | 10003 | HOSP | 1620 | PA INS |
| | | | 7837805 | COMM | 132000 | FLXBEN | | |

| | Gross Pay | Fed. With. Tax | Social Security | State With. Tax | City With. Tax | SUI/SDI | Net Pay | |
|---|---|---|---|---|---|---|---|---|
| This Pay | 8288776 | 2259831 | | 242903 | | | 5637834 | |
| YTD | 58849880 | 12771487 | 3604800 | 1527916 | | | | |
| | | 3960.00 YTDFLX | 400.12 YTD HP | | | | | |

| 13-3299425 | 0069976-0 | Copy C<br>For employee's records<br>This information is being furnished<br>to the Internal Revenue Service. |
|---|---|---|

2 Employer's name, address, and ZIP code

BEAR STEARNS AND COMPANY, INC.
53 WATER STREET
NEW YORK, NY          10041

Advance EIC payment

16                    GROUP INS
        648.15

Social security number          5 Federal income tax withheld
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                     172690.45

Other compensation             11 Social security tax withheld
723398.69                      3379.50

2 Employee's name, address, and ZIP code

13 Social security wages
4500.00

STEVEN ROTHSTEIN
BX 2273 LOOP STATION
CHICAGO, IL
60690

14 Social security tips

| 17 State income tax | 18 State wages, tips, etc. | 19 Name of state |
|---|---|---|
| 6677.30 | 266180.38 | ILLINOIS |
| | 21 Local wages, tips, etc. | 22 Name of locality |

Form W-2 Wage and Tax Statement 1988

13-3299429   185-1400-0

12 Employer's name, address, and ZIP code
BEAR STEARNS AND COMPANY, INC.
55 WATER STREET
NEW YORK, NY          10041

Copy B To be filed with employee's FEDERAL tax return
This information is being furnished to the Internal Revenue Service.

6 Employee's social security number
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

12 Employee's name, address, and ZIP code
STEVEN ROTHSTEIN
BX 2273 LOOP STATION
CHICAGO, IL
              60690

17 State income tax    18 State wages, tips, etc.   19 Name of State
13480.76        457218.32    CALIFORNIA

CA3037A        262.80

Form W-2 Wage and Tax Statement 1988

*duplicate*

| DATE | AAIRPASS ACCOUNT NUMBER | DESCRIPTION OF TRANSACTION | TRANSACTION AMOUNT |
|------|-------------------------|---------------------------|--------------------|
| 11/29/89 | 3459398 | Companion feature for an Unlimited Mileage Lifetime AAirpass.  Cost based on age of cardholder at 39 years old.<br><br>Cardholder; Steven A. Rothstein | $150,000.00 |
| | | Total Due | $150,000.00 |
| | | (Total due according to terms of promissory note and 10% down payment of $15,000.00.) | |

BALANCE DUE 15 DAYS FROM RECEIPT OF INVOICE

PLEASE PAY LAST AMOUNT ABOVE

**American Airlines**

ORIGINAL INVOICE

#90707

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

STEVEN ROTHSTEIN, )
)
Plaintiff, )
)
vs. ) No.
)
AMERICAN AIRLINES, INC., )
) Plaintiff Demands Trial by Jury
Defendant. )

### AFFIDAVIT PURSUANT TO SUPREME COURT RULE 222(b)

Daniel Cummings, being first sworn on oath, states:

1. I am the attorney for plaintiff Steven Rothstein.

2. I have personal knowledge of the matters asserted to be true in this affidavit and if called as a witness could competently testify as to their truth.

3. The amount of damages sought by plaintiff Steven Rothstein exceeds $50,000.

DANIEL CUMMINGS

Subscribed and Sworn to before me
this _6th_ day of March, 2009.

_____
Notary Public

"OFFICIAL SEAL"
SUZANNE J. VANBLADEL
Notary Public, State of Illinois
My Commission Expires Dec. 7, 2009

#90707

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

STEVEN ROTHSTEIN.                )
                                 )
                Plaintiff,       )
                                 )
        vs.                      )       No.
                                 )
AMERICAN AIRLINES, INC.,         )
                                 )
                Defendant.       )       Plaintiff Demands Trial by Jury
                                 )

### JURY DEMAND

Plaintiff Steven Rothstein demands a trial by jury.

Respectfully submitted,

DANIEL CUMMINGS

One of the attorneys for plaintiff

Daniel Cummings
Rothschild, Barry & Myers LLP (#90707)
55 West Monroe Street, Suite 3900
Chicago, IL 60603
312-372-2345
312_372-2350 (facsimile)

| 2120 - Served | 2121 - Served | |
|---|---|---|
| 2220 - Not Served | 2221 - Not Served | |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| SUMMONS | ALIAS - SUMMONS | (8/01/08) CCG N001 |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, _____ LAW _____ DIVISION

No. _____

STEVEN ROTHSTEIN,                    Plaintiff,
                                    (Name all parties)

v.

AMERICAN AIRLINES, INC.,             Defendant.

**PLEASE SERVE:**

American Airlines, Inc.        Register
c/o C T Corporation System, Agent
208 S ... 4Salle Street, Suite 814
Chicago, ... 60604

| | | |
|---|---|---|
| 1 LAW | | 50.00 |
| 1 MILEAGE | | 10.00 |
| REF SHERIFF # 230976 | | |
| CASE TOTAL | | 60.00 * |

**SUMMONS**

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☒ Richard J. Daley Center, 50 W. Washington, Room _____ 801 _____, Chicago, Illinois 60602

☐ District 2 - Skokie
5600 Old Orchard Rd.
Skokie, IL 60077

☐ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

☐ District 4 - Maywood
1500 Maybrook Ave.
Maywood, IL 60153

☐ District 5 - Bridgeview
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ District 6 - Markham
16501 S. Kedzie Pkwy.
Markham, IL 60426

☐ Child Support
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: __90707__

Name: __Daniel Cummings, Rothschild, Barry & Myers LLP__

Atty. for: __Plaintiff Steven Rothstein__

Address: __55 West Monroe Street, Suite 3900__

City/State/Zip: __Chicago, IL 60603__

Telephone: __(312) 372-2345__

WITNESS, __MAR 1 0 2009__, _____

DOROTHY BROWN

_____
Clerk of Court

Date of service: _____, _____
(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: _____
(Area Code)   (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**