IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEVEN ROTHSTEIN, ) | |
| ) | |
| *Plaintiff,* ) | Case No. 2009-cv-2770 |
| ) | |
| vs. ) | |
| ) | Judge Kendall |
| AMERICAN AIRLINES, INC., ) | Magistrate Judge Valdez |
| ) | |
| *Defendant.* ) | |

## DECLARATION OF GARY SOTER

Daniel Cummings
ROTHSCHILD, BARRY & MYERS LLP
55 West Monroe Street, Suite 3900
Chicago, Illinois 60603
Telephone: (312) 372-2345

Law Offices of Gary S. Soter
Gary S. Soter
21900 Burbank Blvd. Suite 300
Woodland Hills, California 91367
Telephone: (818) 992-2922

## CERTIFICATE OF SERVICE

I, Gary S. Soter, hereby certify that on November 19, 2010, 2010, I caused this declaration to be filed with the Clerk of the United States District Court for the Northern District of Illinois, using the CM/ECF system which sent notification of such filing to counsel of record who are all CM/ECF participants.

By:/s/        Gary S. Soter

# DECLARATION OF GARY SOTER

Gary Soter declares:

1. I am one of the attorneys for Plaintiff Steven Rothstein, admitted pro hac vice to represent him in this litigation. I have personal knowledge of the facts stated in this Declaration. If called as a witness I could and would competently testify to the matters stated herein

2. Attached hereto as Exhibits "A" through "J" are true and correct copies of excerpts from the Deposition transcripts of Jerry Challender ("A"), Betty Johnson ("B'), Bridget Cade ("C"), Lisa Welch ("D"), Nancy Rothstein ("E), Lauren Matasar ("F"), Daniel Cummings ("G"), Samir Patel ("H"), Jeffrey Rothstein ("I"), Kenneth Rothstein ("J") and Jacob Wonsover ("K") . Challender and Cade were produced as corporate representatives of American Airlines, Inc. in response to Rothstein's Notice of Taking Deposition of American Airlines, Inc. on the topics listed in Exhibit 1. Pursuant to the provisions of *28 U.S.C. § 1746*, I am also contemporaneously filing and serving Declarations of Steven Rothstein, Ernest Thurmond, James Fairbrother and Arthur Reynolds. I have personal knowledge that the signatures on each Declaration are genuine based on my personal communications with each Declarant.

3. Attached to this Motion as Exhibits are true and correct copies of selected Exhibits from the Depositions of Jerry Challender and Bridget Cade, American Airlines corporate representatives on the Topics identified on

Exhibit 1. The Documents that are Bates numbered with AA were produced by American Airlines in the course of this litigation.

4.     Attached to this Motion as Exhibit 29 is a two page excerpt from an article entitled "Yield Management at American Airlines" published in INTERFACES in January and February 1992 which I found copied from an internet search. (I am using non-consecutive exhibit numbers to enable the parties to identify the Exhibits as they were originally marked in the record) Exhibit 29, written by members of American Airlines Technologies explains American's justification for intentionally overbooking flights: "Airlines allow customers to cancel unpaid reservations with no penalty. Even after purchasing a ticket, many passengers may cancel or miss their flights and receive at least partial refunds. (A passenger who does not formally cancel a reservation and does not show-up for the flight is considered a no-show.) ***On average, about half of all reservations made for a flight is are cancelled or become no-shows***. (Emphasis added)  American estimates that about 15 percent of seats on sold-out flights would be unused if reservation sales were limited to aircraft capacity."

5.     During the course of discovery American Airlines produced a spreadsheet and a disc showing flights reserved and flown by Mr. Rothstein between December 2003 and December 2008. The disc includes 9696 lines of Rothstein reservations.  American Airlines also produced a spreadsheet of flights flown by Rothstein and his companions in the five years preceding termination of his AAirpass.  Those documents (which are too lengthy to produce here) shows that American Airlines calculated that the most recent selling aggregate selling price of the seats actually used by Rothstein and his

companions during the years investigated was more than $5,000,000 [an average of more than $1,000,000 *per year.*]

6.　During the course of discovery, Rothstein asked American Airlines to produce its entire investigation file in connection with American Airlines' analysis of Mr. Rothstein's allegedly fraudulent use of his AAirpass and American's analysis and decision relating to termination. American produced more than 2000 pages of documents in response. I reviewed American Airlines' responsive documents which did not include any reference to consideration of Paragraph 17(c) or any statement to the effect that American intended to reserve the right to terminate the AAirpass without cause.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 16, 2010, at Woodland Hills, California.

_____
Gary Soter