**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| STEVEN ROTHSTEIN, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | Case No. 2009-cv-2770 |
| vs. ) | |
| ) | Judge Kendall |
| AMERICAN AIRLINES, INC., ) | Magistrate Judge Valdez |
| ) | |
| *Defendant*. ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S SUMMARY JUDGMENT MOTION**

Defendant, AMERICAN AIRLINES, INC., by its attorneys, pursuant to FRCP 56 and LR 56.1, submits this Response to Plaintiff's Motion for Summary Judgment and Adjudication:

**I.    PLAINTIFF'S BRIEF VIOLATES LOCAL RULES AND MUST BE STRICKEN**

Plaintiff's brief is replete with procedural violations that thwart the Local Rules and this Court's case management procedures.  First, Plaintiff violates the Court's requirement that any deposition transcript cited in a brief include two pages before and after the cited portion of the transcript.  Plaintiff's failure to abide by this rule places deponents' statements out of context, with misleading results.[1]  Second, Plaintiff's brief violates LR 5.2(c) since it is printed in 11-point font and has line spacing less than 2.0.  *MacNeil Auto. Prods, Ltd. V. Cannon Auto, Ltd.*, 715 F. Supp. 2d 786, 798 n.1 (N.D. Ill. 2010)(filings must "conform to…Local Rule 5.2(c), which requires that all papers filed with the court have line spacing of at least 2.0 lines"). Third, in another attempt to procure more page space, Plaintiff seeks to incorporate his previously filed

---

[1] For example, on page 3 of Plaintiff's brief, he cites to Material Fact no. 8, which references page 82 of Mr. Challender's deposition to support the proposition that American did not prohibit speculative reservations. In violation of this Court's procedures, Plaintiff omitted pages 83 and 84 of Challender's deposition wherein he testified that speculative reservations <u>were</u> considered fraudulent by American and would result in termination. As a result, Mr. Challender's testimony is taken entirely out of context. *See* Pl.'s Memo at p. 3. (Ex. A, Dep. of Challender, p. 83: 1-24, p. 84: 8-10).

opposition to American's Motion to Dismiss, a tactic which has been strongly condemned. *Nat'l Jockey Club v. Ganassi*, 2010 U.S. Dist. LEXIS 95545, at *29 (N.D. Ill. Sept. 14, 2010)(declining to allow parties to circumvent page limits by incorporating prior filings); *Lewis v. People*, 2003 U.S. Dist. LEXIS 791, at *10 (N.D. Ill. Jan. 17, 2003)(same). Plaintiff's failure to heed the spacing and font requirements, coupled with his attempt to incorporate a prior brief, blatantly eschews the 15-page limit of LR 7.1. *Zalesiak v. UnumProvident Corp.*, 2007 U.S. Dist. LEXIS 31592 at fn. 1 (N.D. Ill. Apr. 30, 2007)(warning that briefs which violate LR 7.1 are subject to being stricken)(Kendall, J.). For these reasons, Plaintiff's brief should be stricken.

**II.      PORTIONS OF THE DECLARATIONS OF GARY SOTER AND ERNEST THURMOND SHOULD BE STRICKEN AS IMPROPER**

*A. Gary Soter's Declaration.* Federal courts disfavor a party's attorney filing affidavits in support of a motion for summary judgment, particularly where the affidavit contains argument. *J.W.T., Inc. v. Kobrand Corp.*, 1973 U.S. Dist. LEXIS 12357 (N.D. Ill. Aug. 8, 1973)(serving attorneys' affidavits is disfavored); *Universal Film Exchanges, Inc. v. Walter Reade, Inc.*, 37 F.R.D. 4, 6 (S.D.N.Y. 1965)(striking attorney affidavit containing argument). Plaintiff's attorney Gary Soter states in his declaration "I reviewed American Airlines' responsive documents which did not include any reference to consideration of Paragraph 17(c) or any statement to the effect that American intended to reserve the right to terminate the AAirpass without cause." (Soter Decl. at ¶ 6, attached to Plaintiff's Motion).

American requests that ¶ 6 of Mr. Soter's declaration be stricken because his statement regarding the various documents is an opinion, not fact, and an interpretation about the significance of the materials produced. Indeed, contrary to Mr. Soter's argument, American produced evidence showing that it considered terminating Plaintiff's AAirpass pursuant to ¶ 17(c) in 2004 and calculated the amount of refund that would be due at that time, prior to

exercising its termination rights in 2008. (Ex. B, Aff. of E. Welch, ¶¶ 6-9). American also requests that ¶ 4 of Mr. Soter's declaration be stricken because it relies on a newspaper article, which is inadmissible hearsay. (Soter Decl. at ¶ 4); *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997); *Chicago Firefighters Local 2 v. City of Chicago*, 249 F.3d 649 (7th Cir. 2001)(newspaper article is inadmissible hearsay); *LaFlamboy v. Landek*, 587 F. Supp. 2d 914 (N.D. Ill. 2008)(striking portions of affidavit that relied on news articles).

    *B.   Ernest Thurmond's Declaration.* Mr. Thurmond's declaration unequivocally states the AAirpass is "totally inconsistent with my contemporaneous oral representations to Plaintiff at the time of contracting." (Thurmond Decl. at ¶¶ 13-15, 17, attached to Plaintiff's Motion). The parol evidence rule precludes enforcement of a prior or contemporaneous inconsistent agreement where the parties have concluded a valid integrated agreement. *Garner v. Fidelity Bank, N.A.*, 244 S.W.3d 855, 859 (Tex. App. Dallas 2008). Such is the case here. Paragraph 17(a) expressly states the AAirpass "supersedes all prior communications or agreements between the parties regarding AAirpass." (Ex. C, AAirpass, ¶ 17(a)). By Mr. Thurmond's own admission, his statements to Plaintiff are inconsistent with the language of the AAirpass and were made prior to or contemporaneous with the fully integrated contract, and must be stricken.

    Additionally, Mr. Thurmond's declaration, which seeks to speak to American's intent under the AAirpass, contains multiple instances of inadmissible hearsay. *Einsenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). Plaintiff cannot be saved by FRE 801(d)(2)(D) because Mr. Thurmond was not an American employee at the time of his declaration. (Thurmond Decl. at ¶¶ 2,5). *Young v. James Green Mgmt. Inc.*, 327 F.3d 616, 622-23 (7th Cir. 2003)(former employee statements hearsay); *U.S. v. West*, 2010 U.S. Dist. LEXIS 67870 (N.D. Ill. July 6,

3

2010)(statements after agency relationship ends do not fall within 801(d)(2)(D)). Therefore, the Thurmond declaration should be stricken.

Even if the Court finds that Mr. Thurmond's statements were made while he was an American employee, the subject matter to which he is attesting was not within his job description. *Stephens v. Erickson*, 569 F.3d 779, 793 (7th Cir. 2009)(admission must match subject matter of job description); *Makowski v. SmithAmundesn, LLC*, 2010 U.S. Dist. LEXIS 93986 (N.D. Ill. Sept. 7, 2010)(statements by person not at termination were inadmissible hearsay). Mr. Thurmond was a salesman whose job was limited to the "negotiation and sale" of the AAirpass. While he may have "explain[ed] terms and answer[ed] questions about the meaning and intentions of the form agreement" (Thurmond Decl. at ¶¶ 3, 7-8), there is no evidence whatsoever that he was involved in drafting the AAirpass or that he had first-hand knowledge of its intent. The AAirpass was drafted by American without his input or assistance. (Thurmond Decl. at ¶¶ 3, 5-8, 14-5, 17). Indeed, he admits that, when presented with a customer's question, he "discussed these issues with upper management." *Id.* at ¶ 14. Mr. Thurmond fails to identify the extent of knowledge that he obtained from "upper management" and fails to identify the "upper management" employees, which is a sufficient basis to strike his affidavit. *Davis v. City of Chicago*, 841 F.2d 186, 189 (7th Cir. 1988); *Barth v. Village of Mokena*, 2006 U.S. Dist. LEXIS 19702, *20 (N.D. Ill. Mar. 31, 2006)(striking paragraphs from affidavit for failure to disclose identities of declarants). Thus, any knowledge Mr. Thurmond received was based on second-hand information from unknown declarants, not his own personal knowledge, so the entire affidavit, or at least ¶¶ 10-17 thereof, should be stricken.

### III. <u>PLAINTIFF'S ARGUMENTS REGARDING ¶ 17(C) ARE MERITLESS</u>

Plaintiff misleadingly suggests in his brief and supporting documents that the AAirpass self-expires at 200 months. *See* Pl.'s Brief at pp. 2, 4. Yet, nowhere does ¶ 17(c) or its refund provision at ¶ 7(d) state that the AAirpass would automatically terminate at 200 months. Moreover, any attempt by Plaintiff to paint the AAirpass as self-terminating at 200 months is nonsensical and contrary to the plain language and the facts of this case. *See* Pl.'s Brief at p. 1 ("undisputed that Rothstein…received AAirpass benefits for 21 years"). The 200-month provision is simply a marker for the calculation of a refund. It has nothing to do with a timeframe associated with American's termination rights. In fact, Plaintiff acknowledged that he understood this exact point:

> **Q**. Okay. Is it your understanding then that for the purposes of calculating a refund when a refund is due that American would deem the Unlimited Mileage Lifetime AAirpass as having a term of 200 months?
> **A**. <u>For refund purposes only</u>. (Ex. D, Dep. of S. Rothstein, pp. 66:12 – 67:15) (emphasis added).

In addition, Plaintiff cites to American's Second Affirmative Defense to support his assertion that American needed cause to terminate under ¶ 17(c), but that defense does not state that cause is a catalyst for termination. It simply states: "Paragraph 17(c) of the AAirpass Agreement provides that American has the right to terminate the AAirpass Agreement." (Ex. E, American's Second Affirmative Defense, p.5). Plaintiff also contends that American's corporate representative, Jerry Challender, testified that American needed cause to terminate the AAirpass under ¶ 17(c), but Mr. Challender specifically stated the <u>opposite</u> in his deposition:

> **Q.** But when you reviewed that language [of Paragraph 17(c)], you were of the belief at that time that you needed cause to terminate him, weren't you?
> **A.** <u>*No, that is not true*</u>. (Ex. A, Dep. of J. Challender, p. 117: 6-9) (emphasis added).

5

The above excerpt demonstrates that Mr. Challender was <u>not</u> of the belief that a showing of cause was necessary for termination under ¶ 17(c) and demonstrates the length to which Plaintiff has gone to mischaracterize the evidence to support his motion.

In addition, ¶ 17(c) of the AAirpass is a reservation of rights clause. Courts not only support the inclusion of such clauses in contracts but continuously hold in favor of them in contractual disputes. In *Cardinal Stone Co. v. Rival Mfg. Co.*, 669 F.2d 395 (6th Cir. 1982), a sales contract included a reservation of rights provision that stated: "Buyer reserves the right to change or amend the specifications and to terminate this purchase order in whole or in part at any time." *Id.* at 396. The manufacturer terminated the contract, and the component manufacturer argued that the manufacturer could not arbitrarily terminate the contract, despite the reservation of rights clause. The Sixth Circuit disagreed, stating, "[f]rom the outset [the component manufacturer] was on notice that [the manufacturer] had the unilateral right to terminate at anytime. It accepted this risk when it signed the agreement." *Id.* at 396.

Similarly, here, Plaintiff accepted the risk of termination of the AAirpass when he signed it. There is nothing unfair or one-sided about the termination clause since there was a specific formula in that clause to refund the unused portion of the AAirpass, which was specifically initialed and agreed to by Plaintiff. *See, e.g., Englert v. Nutritional Sciences, LLC* 2008 Ohio App. LEXIS 4290, *1-2 (Ohio. App. Ct. Sept. 30, 2008)(contestant who was denied prize was bound by cancellation clause); *Kahn v. Janowski*, 191 Md. 279, 285-86 (Md. 1948)(right to terminate contract is valid and will be enforced).

Courts have held that a reservation of the right by one party to terminate a "lifetime" agreement made after the other has completed payment of performance is valid and enforceable. *Vallone v. CNA Financial Corp.*, 375 F.3d 623, 633 (7th Cir. 2004)(summary judgment proper

where contract gave employer right to terminate despite "lifetime" healthcare allowance); *United Mine Workers of America v. Brushy Creek Coal Co.*, 410 F. Supp. 2d 723, 728 (S.D. Ill. 2006) (interpreting contract with lifetime benefit that contained termination clause as "good for life unless revoked or modified.").

The fact that Plaintiff now claims to have a different interpretation of the AAirpass does not make it or ¶ 17(c) ambiguous. Indeed, an ambiguity does not arise simply because the parties have differing interpretations of the contract. *Seagull Energy E&P, Inc. v. Eland Energy, Inc.*, 207 S.2.d3d 342, 345 (Tex. 2006). In construing a written agreement, the court must ascertain and give effect to the parties' intentions *as expressed in the agreement. Frost National Bank v. L&F Distributors, Ltd.*, 165 S.W.3d 310, 311-12 (Tex. 2005). Here, there is no question that ¶ 17(c) gives American the right to terminate.

To support his argument that "the most reasonable interpretation" of ¶ 17(c) is that "American reserves the right to terminate any AAirpass, except for Unlimited Mileage AAirpasses" (*See* Pl.'s Brief at 4), Plaintiff selectively quotes sections of ¶ 17(c) and American's tariff to misleadingly suggest that American's right to terminate under ¶ 17(c) does not apply to Unlimited Mileage AAirpasses. Paragraph 17(c) provides otherwise: "**American reserves the right to terminate this Agreement** and refund the Purchase Price of **any AAirpass**, less charges for mileage actually flown, at a rate per mile of $.24, except for Unlimited Mileage AAirpasses, which will be refunded in accordance with paragraph 7, subparagraph d) of this Agreement." (Ex. C, AAirpass, ¶ 17(c)). Read in its entirety, ¶ 17(c) allows American to terminate Plaintiff's AAirpass (i.e., "this Agreement") and "any AAirpass," and only differentiates how refunds are *calculated* for Term AAirpasses (less charges for mileage actually flown, at a rate per mile of $.24) versus Unlimited Mileage AAirpasses (calculated in accordance

7

with ¶ 7(d)). Thus, Plaintiff's alternative interpretation of ¶ 17(c) is unreasonable. *Master Lock Co. v. Hawn*, 2007 U.S. Dist. LEXIS 28183 at *33 (N.D. Ill. Apr. 16, 2007).

### IV.     PLAINTIFF'S USE OF *EJUSDEM GENERIS* IS MISPLACED

Plaintiff claims that the application of *ejusdem generis* means that the "general terms" in ¶ 17(c) only permit American to terminate his AAirpass in those situations enumerated in ¶ 17(b), which permits termination if the AAirpass program is affected by government action. The problem with Plaintiff's logic is that ¶¶ 17(b) and (c) are two distinct and separate provisions that grant two different avenues for termination. Paragraph 17(b) allows a refund where the AAirpass program is terminated due to government action, while ¶ 17(c) allows a refund where American, unilaterally and without regard to ¶ 17(b), decides to terminate a specific AAirpass and provide a refund if applicable. Indeed, ¶ 17(b) does not even reference ¶ 17(c); rather, it references "*paragraph 7 above*." Further, the inclusion of ¶¶ 17(b) and (c) under the "Miscellaneous" section heading of the AAirpass is a broad hint that they are unrelated and should be read independent of each other. The *ejusdem generis* doctrine generally applies only where the general and specific terms are within the same paragraph and clearly interrelated, not where they are in two distinct, unrelated paragraphs. S*ee Texas D.O.T. v. York,* 284 S.W. 3d 844, 847 (2009)(construing broad term "special defects" in light of specific terms "excavation or obstruction" located in same paragraph); *Hussong,* 896 S.W. 2d at 322. Here, ¶ 17(c) is self-contained in its own distinct and discrete paragraph, completely apart from ¶ 17(b), which is an unrelated paragraph. Therefore, *ejusdem generis* is patently inapplicable.

### V.     PARAGRAPH 12 IS VALID AND ENFORCEABLE

Plaintiff claims ¶ 12 of the AAirpass is "illusory, meaningless and unconscionable" and thus unenforceable. *See* Pl.'s Memo. at p. 5.

  *a. Paragraph 12 is not illusory.*  Under Texas law, a bilateral contract must be based upon a mutuality of obligation. *See, e.g., Texas All Risk General Agency, Inc. v. Apex Lloyds Day,* 2010 Tex. App. LEXIS 9035 at *11 (Tex. App. 2010). Mutuality of consideration **_in each clause_** of a contract is not required when consideration is given for a contract as a whole. *Id.* (emphasis added). Here, Plaintiff agreed to pay money to American in return for American's agreement to provide air transportation for him and a qualified companion, and it is undisputed that American provided such services "for more than twenty years." Although American was obligated to provide air transportation to Plaintiff, it specifically retained the right to terminate that obligation if it determined Plaintiff fraudulently used his AAirpass. This does not render the AAirpass illusory. *Cherokee Comm., Inc. v. Skinny's Inc.*, 983 S.W.2d 313, 316 (Tex. Ct. App. 1994)(mutuality not lacking merely because one party had power to terminate the agreement).

  *b. Paragraph 12 is not unconscionable.* Plaintiff suggests that ¶ 12 could allow American to make a determination of fraud that was entirely erroneous or made in bad faith, and is therefore unconscionable. Under Texas law, American could not arbitrarily make such a determination of fraudulent use that was in bad faith. *See Seale v. American Motorist Insurance Co.*, 798 S.W.2d 382 (Tex. App. 1990). In this case, however, there is no evidence that American's determination was in bad faith. *Karp v. The Fair Store, Inc.*, 709 F. Supp. 737 (E.D. Tex. 1988)(court refused to substitute its judgment for that of employer which had terminated employee for "immoral conduct."); *Macy v. Waste Management, Inc.*, 294 S.W.3d 638, 646 (Tex. App. 2009). To the contrary, the record is replete with evidence that American fully investigated Plaintiff's travel history over a period of years before making the decision to terminate the AAirpass. American reviewed "thousands" of Plaintiff's booking records, including some of his traveling companions prior to terminating his contract. (Ex. F, Cade Dep.

Vol. 1. at p. 11:25,12:1-6; 61: 1-4; 62:4-18). American met with Plaintiff in 2004 and discussed his practice of fraudulently reserving empty seats. (Ex. G, Welch Dep. at p. 10:10-20); (Ex. A, Challender Dep. at p.103:10-19). Plaintiff has admitted that he made reservations under the name of imaginary, non-existent persons such as "Steven Rothstein, Jr." and "Bag Rothstein" to secure an empty seat next to him on American flights. (Ex. D, S. Rothstein Dep. at p. 176:18-24, 177:1-16).

Relatedly, Plaintiff argues that termination is improper because nothing in the AAirpass specifically prohibits the type of fraudulent conduct he engaged in. *See* Pl.'s Memo. at pp. 3, 7, 13-14. The absence of any specific prohibition of making fictitious, speculative, impossible, illogical reservations, or consistently not showing up for booked flights, does not mean that such practices are permitted under Plaintiff's AAirpass. American was within its rights to determine that such activity provided sufficient basis for termination without having to enumerate every conceivable instance of fraud. *Macy v. Waste Management, Inc.*, 294 S.W.3d 638, 646 (Tex. App. 2009)(court upheld defendant's termination of plaintiff's employment contract where defendant alone determined that termination was "for cause" because of misstatements in audit; court held that nothing supported plaintiff's position that a jury should decide the issue).

    *c.*    *Section 12 is not an "unenforceable and void penalty."* Plaintiff claims that ¶ 12 is a liquidated damages clause and an "unenforceable penalty as a matter of law." Plaintiff's argument fails, however, because ¶ 12 is a termination clause, and is devoid of any language that could in any way be construed as providing for liquidated damages. Paragraph 12 is akin to a "for cause" termination provision in an employment contract rather than a liquidated damages provision. The case of *Macy v. Waste Management, Inc.* 294 S.W.3d 638 (Tex. App. Houston 2009) is instructive. In *Macy*, plaintiff's employment was terminated for cause after the

employer made an internal determination that the plaintiff had committed fraud. The employer sought summary judgment on the basis that it terminated plaintiff for cause pursuant to the terms of the parties' contract. The defendant conducted an investigation and "determined [plaintiff] committed fraud by understating his departmental 'headcount' and accumulating accruals," both of which "could result in lack of compliance with Securities and Exchange Commission regulations." *Id.* at 643. The court upheld this provision and stated that the company was given the sole power to determine what constituted "cause" under the agreement, and that the jury should not independently decide whether cause existed where there was no evidence of bad faith. *Id.* at 646-48. As in *Macy*, American conducted an investigation and terminated Plaintiff's AAirpass based on its determination that he fraudulently used the AAirpass, which is fundamentally different than the liquidated damages/penalty cases cited by Plaintiff. *See, e.g., Robert G. Beneke & Co. v. Cole*, 550 S.W. 2d 321 (Tex. App. 1977)(disputed clause permitted the employer to seek damages of $25,000 for a breach of a covenant not to compete *and* to seek any actual damages the employer incurred because of the breach.)

  *d. Plaintiff's interpretation of ¶ 12 relies upon inadmissible parol evidence.* Plaintiff also attempts to avoid the consequence of his fraudulent use by arguing that the use of the card by another person was the "only basis" upon which American could terminate his AAirpass. (Ex. D, S. Rothstein Dep. at pp. 42:1-5; 43:9-18). The problem with Plaintiff's argument is that it runs afoul of the plain language of ¶ 12, which provides American with the discretion to make the determination of what constitutes fraud, and does not restrict the type of fraud that could result in termination of the AAirpass. In addition to situations where the holder allowed an imposter to use his AAirpass, termination is also available where American determines that the holder: (1) used fictitious names to book empty seats for himself; (2) booked speculative

11

reservations that were either canceled at the last minute or substituted with a random already-ticketed passenger at the airport; (3) made impossible or illogical reservations; and (4) repeatedly failing to show up for a flight or canceling booked flights on the day of the flight. (Ex. H, Cade Dep., Vol. II, p. 16: 9-16). If termination were only available where someone else used Plaintiff's AAirpass, then ¶ 12 would have said so. Plaintiff's reliance upon parol evidence to support his self-serving interpretation of an unambiguous clause must be rejected.

## VI. PLAINTIFF'S DAMAGES ARE LIMITED AS A MATTER OF LAW

In the alternative, if the Court deems that Plaintiff is entitled to monetary damages for the termination of his AAirpass, then Plaintiff should only be entitled to the AAirpass Purchase Price of $400,000 less the specifically agreed to refund formula.[2] It is well-settled that the appropriate remedy for contractual damages, in cases similar to Plaintiff's, is to make the individual whole, meaning that American would reimburse Plaintiff in the amount for which he purchased the AAirpass – $400,000. *In Re: Estill Medical Technologies, Inc.*, 2004 Bankr. LEXIS 333 (Bank. Ct. N.D. Tex. 2004) (lost purchase price is proper measure of damages).

The parties expressly agreed that the maximum value of the AAirpass was the Purchase Price per the terms of Paragraph 7 of the AAirpass. Paragraph 7(b) explicitly states:

> Holder's estate, upon holder's death, holder's conservator on holder's behalf in the event holder becomes mentally incapacitated, or holder in the event holder becomes physically disabled and unable to fly on American may obtain a refund per the formula as shown below in subparagraph (c). (Ex. C, AAirpass, ¶ 7(b)).

It follows that, per ¶ 7, if Plaintiff had died, became physically disabled, or mentally incapacitated, the parties agreed that Plaintiff would be "made whole" if his estate obtained "a refund per the formula as shown below in subparagraph (c)." Logic further dictates that the value

---

[2] Plaintiff paid $383,509.93 for his AAirpass and Companion Pass, as he was entitled to a set-off from a previous limited-term AAirpass that he had already purchased. (Ex. C, AAirpass, Invoice dated 10/9/87).

12

of the AAirpass Purchase Price would decrease while he is alive. In other words, if the agreed-upon value of the AAirpass had Plaintiff died would be $400,000 less the refund formula, why would the value be *more* while he is alive? (Ex. C, AAirpass, ¶ 7.). More importantly, Plaintiff's initials in the margin of the contract show that he agreed that he would be "made whole" by applying the agreed refund formula in the event American terminated the AAirpass program under ¶ 17(b) or terminated his AAirpass under ¶ 17(c).

Similarly, the maximum amount that Plaintiff would receive if American had exercised its right to terminate under ¶ 17(c) on the day Plaintiff signed his AAirpass would also be $400,000. (Ex. C, AAirpass, ¶ 17(c)). Thus, if either Plaintiff or American terminated the AAirpass, the maximum measure of damages would be the Purchase Price ($400,000), which is then reduced over time pursuant to the refund formula. To apply a different measure of damages such as that urged by Plaintiff (*i.e.*, market value) would be antithetical to the agreement of the parties and would place Plaintiff in a better position than if American had continued to perform under the AAirpass. Accordingly, if the Court decides to grant Plaintiff's motion and award him damages, which American strongly opposes, then his damages should be limited to the purchase price of the AAirpass less the specifically agreed to refund formula.

## VII. PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT ON AMERICAN'S COUNTERCLAIM

Additionally, summary judgment is not appropriate on American's counterclaim.[3] Count I (common law fraud) of American's counterclaim alleges that Plaintiff made material false representations to American in order to reserve First Class travel for persons that did not intend

---

[3] American's counterclaim for damages arising out of Plaintiff's fraud is distinguishable from its determination of "fraudulent use" under ¶ 12 of the Agreement. To prevail on Count I, American must prove the *prima facie* elements of a common law fraud case. No such requirement is necessary for American to terminate under ¶ 12. American's determination of "fraudulent use" under ¶ 12 is a subjective one. *See Karp v. The Fair Store, Inc.*, 709 F. Supp. 737 (E.D. Tex. 1988)(court refused to substitute its judgment for that of employer which had terminated employee for "immoral conduct.").

to travel, with the intent to deceive American into reserving seats for persons that did not intend to travel, and in order to obtain transportation services from American without compensating American for those services. American justifiably and reasonably relied upon Plaintiff's false representations, which wrongfully deprived American of revenue. (Ex. E, American's Answer, Affirmative Defenses and Counterclaim, at p. 20, ¶¶ 54-57).

Plaintiff incorrectly states that there is no genuine evidence of misrepresentation by Plaintiff. To the contrary, in addition to the fraudulent behavior mentioned above in Section V, the record is replete with Plaintiff's fraudulent misrepresentations to American including: (1) making reservations under the name of imaginary, non-existent persons, "Steven Rothstein, Jr." and "Bag Rothstein," in order to secure an empty seat next to him on American flights for many years. (Ex. D, S. Rothstein Dep. at p. 176:18-24, 177:1-16) (Ex. I, Cade Aff. at ¶ 8); (2) making reservations for persons with whom he "expected to travel" but did not confirm whether the companion could travel with him, and later admitted that he was "frivolous" about traveling. (Ex. D, S. Rothstein Dep at p. 171: 7-17; 173:17-22;174:1-4); (3) making reservations for several persons, holding them almost until the time of departure, and replacing the passengers with strangers he found at the gate. (Ex. D, S. Rothstein Dep., pp.132: 22-24; 133:1-15; 137:9-24; 138:1-8; 140:20-24; 142:3-22; 143:12-24; 144; 145;1-13; 153:17-24; 154-155; 156:1-15); (4) making duplicative reservations for himself on at least three occasions in 2008. (Ex. H, Cade Dep., Vol. II, pp. 70:2-12; 94:6-25; 95:1-16; 99:3-15); (5) making multiple reservations for passenger Daniel Cummings to travel between the United States and Europe at the same time that Mr. Cummings had his own plans to travel from Chicago to Paris. (Ex. F, Cade Dep., Vol. I, pp. 84:24-25, 85:1-22); and (6) making reservations for his brother Kenneth Rothstein to travel with him from New York to Chicago, even though Kenneth Rothstein lived in Denver, Colorado

and would not have been able to travel with Plaintiff at the time. (Ex. D, S. Rothstein Dep., pp. 138:23-24; 139:1-13).

The materiality of the aforementioned misrepresentation is a question of fact. *Napcor Corp. v. JPMorgan Chase Bank, NA*, 2010 Ill. App. LEXIS 1259 (Ill. App. Ct. 2d Dist. Nov. 19, 2010). Additionally, whether American's reliance upon Plaintiff's misrepresentations is justified is a question of fact that must be viewed in light of the surrounding circumstances. *Johnson v. Waterfront Servs. Co.*, 391 Ill. App. 3d 985, 993 (5th Dist. 2009). As such, Plaintiff's motion for summary judgment on Count I of American's counterclaim must be denied.

Moreover, Plaintiff has identified no basis for granting summary judgment on Counts II and III of American's counterclaim. Count II of American's counterclaim alleges that Plaintiff breached the contract with American by (1) violating the terms which allowed him to reserve "one seat per flight (two seats if qualified for travel with a companion)," and (2) violating the terms and conditions of American's rules tariff. Because ¶ 12 allowed American to terminate the agreement, without refund, if it determined that Plaintiff engaged in fraudulent use of the AAirpass, the AAirpass necessarily mandated that Plaintiff refrain from engaging in such fraudulent use. Plaintiff's suggestion that his conduct did not constitute a material breach of the AAirpass is simply wrong. Plaintiff claims that he is entitled to summary judgment on Count III of American's counterclaim because "Rothstein acted within his rights" and did not engage in an independently tortious or wrongful act. *See* Pl.'s Memo at 14. As noted above, American has identified the fraudulent activity engaged in by Plaintiff, which serves as both a basis for termination of the AAirpass under ¶ 12, and American's claim in Count I for common law fraud, which, in turn, provides the basis for Count III. Thus, Plaintiff's claim that he did not engage in any wrongful act is erroneous and cannot properly serve as a basis for summary judgment.

WHEREFORE, Defendant respectfully requests that the Court deny Plaintiff's motion for summary judgment in its entirety, and such other relief as the Court deems just.

Dated: December 17, 2010          Respectfully submitted.

                                                   **AMERICAN AIRLINES, INC.**

                                                   By: /s/ Mark S. Susina
                                                   One of Its Attorneys